IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

21ˢᵗ Mortgage Corporation,

        Appellant,

    v.                            Case No. 22-CV-88-jdp

David Lester Warfel, Jr. and
Jeanne Marie Warfel,

        Appellees.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF WISCONSIN

**BRIEF OF APPELLEES**

George B. Goyke
Goyke & Tillisch, LLP
2100 Stewart Avenue, Suite 140
Wausau, WI 54401
Telephone: (715) 849-8100
goyke@grandlawyers.com

**Attorney for Appellees**

May 16, 2022

**TABLE OF CONTENTS**

TABLE OF CONTENTS……………………………………………………………………i

TABLE OF AUTHORITIES………………………………………………………...……ii

STATEMENT OF THE CASE………………………………………………………. .1

SUMMARY OF THE ARGUMENT…………………………………………………..2

ARGUMENT…………………………………………………………………………..3

    A. The Seventh Circuit Confirms that Chapter 13 Debtors May Pursue
       Actions Under 11 U.S.C. §544 in Their Own Names……………………………3

    B. The Court Correctly Avoided 21st Mortgage's Unperfected Lien………………...8

    C. The Bankruptcy Court Correctly Found the Lien of 21st Mortgage to Be
       Unperfected……………………………………………………………………10

CONCLUSION………………………………………………………………………..15

CERTIFICATE OF SERVICE……………………………………………...…17

CERTIFICATE OF COMPLIANCE……………………………………..………18

# TABLE OF AUTHORITIES

<u>CASES</u>

*Ahrens v. Town of Fulton*, 251 Wis. 2d 135 (2002)……………………………………...…13,14

*Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir.1988)………………..………………6

*Cable v. Ivy Tech State College*, 200 F.3d 467 (7th Cir. 1999)……………………….……6,7

*Donato v. Metropolitan Life Insurance Co.,* 230 B.R. 418 (N.D. Cal.1999)……………..……..6,7

*Einoder v. Mount Greenwood Bank (In re Einoder),*
55 B.R. 319, (Bankr. N.D.Ill. 1985)…………………………………………..…………..6, 7(fn2)

*Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.,* 530 U.S. 1,
120 S.Ct. 1942 (2000)………………………………………………………………….……7

*In re Beabout*, 110 B.R. 883 (Bankr. S.D. Ill. 1990)…………………………………………13

*In re Boyette*, 33 B.R. 10 (Bankr. N.D.Tex. 1983)…………………………………………..6

*In re Bridge,* 18 F.3d 195 (3rd Cir. 1994)……………………………………………..………10

*In re Carley Capital Group*, 117 B.R. 951 (Bankr. W.D. Wis. 1990)……………...…………10

*In re FBN Food Serv., Inc.,* 185 B.R. 265 (N.D.Ill.1995)………………………………..……….6

*In re Hansen*, 332 B.R. 8 (10th Cir. BAP 2005)……………………………………….……………5

*In re Smith*, 640 F.2d 888 (7th Cir.1981)…………………………………………..……...6

*In re Sullivan,* 448 B.R. 852 (Bankr. N.D.Ga. 2010)…………………………………………4

*In re U.S. Marketing Concepts, Inc.*, 113 B.R. 487 (Bankr. N.D.Ind.1990)………………….…….6

*In re Wirmel*, 134 B.R. 258 (Bankr. S.D. Ohio 1991)………………………………………….7

*Kohn v. Darling Community Schools*, 2005 WI 299, 698 N.W.2d 794 (2005)…………………14

*Kordecki v. Rizzo*, 106 Wis.2d 713, 317 N.W.2d 479 (1982)………………...………………12

*Marbury v. Madison*, 5 U.S. 137 (1803)……………………………………………………10

*Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194 (3d Cir.1992)…………….…………..6

ii

*Matter of Berge*, 39 B.R. 960 (Bankr. W.D. Wis. 1984)…………………………....………..10

*Matter of Ottaviano*, 68 B.R. 238 (Bankr. D. Conn. 1986)……………………………….....6

*Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513 (2d Cir.1998)…………………………6

*Seelen v. Couillard*, 486 B.R. 466, (Bankr. W.D. Wis. 2012)…………………………....………12

*Unsecured Creditors Committee of Debtor STN Enterprises* v. Noyes,
779 F.2d 901 (2d Cir. 1985)……………………………………………………….....7 (fn2)

STATUTES

11 U.S.C. § 103(a)……………………………………………………………….......3

11 U.S.C. § 541(a)(1)……………………………………………………………......6

11 U.S.C.§ 544(a)(1)-(3)…………………………………………………….3,4,6,8-10

11 U.S.C. § 1306(b)……………………………………………………………….6

28 U.S.C. § 158 (b)………………………………………………………..….5(fn1)

Wis. Stat. § 59.43………………………………………………………………….8

Wis. Stat. § 70.043……………………………………………………..…….…...13

Wis. Stat. § 101.9203……………………………………………………...11,14,15

Wis. Stat. § 101.9209……………………………………………………………11

Wis. Stat. § 101.9213……………………………………………………………11

Wis. Stat. § 101.9213(6)……………………………………………………….....11

Wis. Stat. § 101.9214……………………………………………………………14

Wis. Stat. §101.9218(1) and (2)……………………………………………………15

Wis. Stat. § 409.102(1)(k)………………………………………………….…….10

Wis. Stat. § 409.102(1)(ng)………………………………………………………11

Wis. Stat. § 409.311(1)(b) or (f)……………………………....………………….11

Wis. Stat. § 409.334…………………………………………………………..10,13

Wis. Stat. § 409.334.(5)……………………………………………………………...…..15

Wis. Stat. § 409.501……………………………………………………...…………..8

Wis. Stat. § 409.502………………………………………………….……….....10,11

Wis. Stat. § 706.001(1)…………………………………………………………...…12

Wis. Stat. §706.08(1)(a)………………………………………….…………………8,12

Wis. Stat. § 706.09(1)(b)…………………………………………….……………...12

Wis. Stat. §806.04…………………………………………………….……………..8

Wis. Stat. §840.03(1)(b)…………………………………………………….……..8

## OTHER AUTHORITIES

*A Guide To Reading, Interpreting And Applying Statutes*,
The Writing Center at Georgetown Law, p. 4, retrieved on May 13, 2022 at
https://www.law.georgetown.edu/wp-content/uploads/2018/12/A-Guide-to-Reading-Interpreting-and-Applying-Statutes-1.pdf. ……………………………………………………………....9


Susan V. Kelley, *Ginsberg & Martin on Bankruptcy*, § 9.01[B][1] (5th Ed. Supp.2014–2)……..4

**STATEMENT OF THE CASE**

In this appeal, only conclusions of law have been challenged. Therefore, the findings of fact as determined by the Court and read upon the record are conclusive. The determinative facts as found are as follows:

Jeanne Warfel purchased a manufactured home from Quality Mobile Home Sales. 22-cv-88, ECF 3-7, P. 6. The home she selected was required to be placed on a slab, a foundation with a basement, or a foundation that had a crawl space. *Id.* She applied for financing for the home from 21st Mortgage Corporation ("21st Mortgage") based on information provided by Quality Mobile Home Sales. *Id.* In applying for financing for the manufactured home, 21st Mortgage indicated that it was not procuring any title report or title insurance for the property. *Id.* at 7. It did, however, require proof that the Warfels owned the property. *Id.* Among the closing documents were several versions of limited powers of attorney. *Id.* at 8. The closing of the transaction occurred at a bank because of the need for notaries and because 21st Mortgage had no representative attending the closing. *Id.*

21st Mortgage executed its own security documentation under the power of attorney. *Id.* at 9. It filed no UCC fixture filing nor any mortgage. *Id.* at 10. Instead, it solely applied for a certificate of title from the Wisconsin Department of Safety and Professional Services. The manufactured home was delivered to Warfels' real property on June 19, 2019, one day after Wisconsin Department of Safety and Professional Services' issuance of a confirmation of security interest lien perfection form. *Id.* at 9-10.

The lender required proof of ownership of the property to which the manufactured home was to be delivered. *Id.* at 19. There is overwhelming evidence that the debtors intended to permanently affix the manufactured home to the real property upon acquiring it. *Id.* at 20. The

Court found that the owner intended upon acquiring the manufactured home to permanently affix it to the land. *Id*. at 23. The Court additionally found through a litany of specific facts that manufactured home was affixed to the property. *Id*. at 20-21, 36.

## SUMMARY OF THE ARGUMENT

21st Mortgage raises three issues on appeal. It asserts that the bankruptcy court committed three errors of law and makes no contention over the findings of fact. Thus, the foregoing Statement of the Case sets forth the evidence found in this case.

The Warfels filed this bankruptcy case in June 2020. At that time, they owned a manufactured home that was affixed to real property that they owned. 21st Mortgage claimed to hold a perfected security interest in that manufactured home; however, it had never taken a mortgage nor filed a UCC fixture filing. It claims that the inclusion of its lien on the Certificate of Title was sufficient to perfect its claim. The Warfels filed an adversary proceeding in the bankruptcy court to determine that it was not perfected and to avoid its lien, thereby freeing up the money they would otherwise have paid on the secured claim to pay other expenses in their plan.

21st Mortgage alleges that even without any mortgage or UCC fixture filing, it is secured through the Certificate of Title. [However, Wisconsin perfection of liens for law relating to manufactured housing except, from the general titling perfection situations, situations where the mobile home is to be affixed to owned real estate.] Since from the outset both parties knew it was to be attached to the land, it required that there be notice in the regular real estate recording records that are customarily searched by home buyers to discover the lien claim. Since an innocent buyer would not be able to locate the lien, the bankruptcy court found it to be unperfected.

The effect of an unperfected lien is that a trustee in bankruptcy could avoid it because a trustee is given the status of a bona fide purchaser of the real property for value and without notice. 21st Mortgage complains because the Warfels filed the complaint to avoid the lien, not the trustee. However, a Chapter 13 debtor does have the right to pursue claims that would have belonged to the estate.

The 21st Mortgage also complains how the lien was avoided. In its oral decision, the Court referenced 11 U.S.C. § 544(b)(1) as the authorizing statute for the lien avoidance instead of 11 U.S.C. § 544(a). The language in the two statutes is the same, and while either permits the trustee (and by extension, the Chapter 13 debtor-in-possession) to avoid the lien, the creditor gripes that (b) is wrong without mentioning that (a) would have accomplished the same end. 21st Mortgage's argument would have left a right without a remedy, clearly not the correct outcome in American jurisprudence.

The effect of the decision is to leave 21st Mortgage as a general unsecured claim instead of a secured claim in this matter, with no recourse once the bankruptcy discharge is entered. This outcome could have been prevented had 21st Mortgage protected itself with a $30 mortgage recording or UCC fixture filing fee.

## ARGUMENT

### A.  The Seventh Circuit Confirms that Chapter 13 Debtors May Pursue Actions Under 11 U.S.C. §544 in Their Own Names.

The bankruptcy code is designed to provide fairness to all parties. It is divided into several chapters, each with a different purpose. "Chapters 1, 3 and 5 of this title apply in a case under chapter 7, 11, 12 or 13 of this title" 11 U.S.C. §103(a).

One of these general provisions is 11 U.S.C.§544. The statute provides,

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

These powers are generally referred to as "strong-arm" powers. They empower the avoidance of improperly perfected liens for the benefit of the general bankruptcy creditors. Congress enacted this provision to even the playing field and prevent special treatment, even where equity may dictate other results. For instance, a debtor was required to guaranty his company's debt with a home mortgage on his personal residence as a condition for making the loan. The intent of the parties was clearly that the home would serve as additional collateral. However, the bank drafted the mortgage to be signed by the company and not the individual. The resulting mortgage was invalid and avoided pursuant to 11 U.S.C. §544(a)(3). *In re Sullivan,* 448 B.R. 852 (Bankr. N.D.Ga. 2010).

One commentator framed the question this way:

> Suppose the debtor, instead of filing bankruptcy, had transferred the same real property to a bona fide purchaser who knew nothing of a claimant's asserted interest in the property. Between the claimant and the bona fide purchaser, who would prevail under state law? If the answer is the bona fide purchaser, the trustee can avoid the transfer under § 544(a).

Susan V. Kelley, *Ginsberg & Martin on Bankruptcy*, § 9.01[B][1] (5th Ed. Supp.2014–2).

For instance, if some creditor would say that they loaned the money for the debtor to purchase a car and that therefore the car is their collateral, the fact that they failed to either place their name on the title to the vehicle or to physically retain the title would preclude them from having a "perfected" security interest in the vehicle. Even though the oral promise may be enforceable as between the car buyer and her lender, it is not fair to third parties that the promise be enforced as against their interests. There would be nothing to prevent the car owner from selling the vehicle to an innocent third-party buyer, thereby subjecting the buyer to losing his investment and his vehicle to the secret, oral lien of the original lender. That is why the law requires perfection of a security interest.

The strong-arm provisions give the person wielding the trustee's powers the status of that innocent, third-party buyer. 21st Mortgage first attacks the jurisdictional ability of the Court to entertain a lien avoidance action that is brought by the debtor in bankruptcy rather than the trustee. This misapprehends the structure of the bankruptcy code.

Chapter 7 is labelled "Liquidation." 11 U.S.C. ch. 7. In a liquidation case, the debtor wields no power over the conduct of the bankruptcy case. On the other hand, chapters 11, 12 and 13 are all reorganization cases. In each of these chapters, a debtor is authorized to operate its business and conduct its affairs. It is called a Debtor-in-Possession. The Debtor-in-Possession is granted the right to sue and be sued.

The bankruptcy court recognized the controversy that existed long ago. 21st Mortgage points to the 10th Circuit bankruptcy appellate panel decision,[1] *In re Hansen*, 332 B.R. 8 (10th Cir. BAP 2005). There, the BAP determined it had no jurisdiction to hear the debtor's appeal of

---

[1] A Bankruptcy Appellate Panel, or BAP, is authorized by 28 U.S.C. § 158 (b) to hear, with consent of all the parties, appeals from bankruptcy courts that otherwise would be heard by district courts, but only in those districts in which the district judges authorize appeals to BAPs. The Seventh Circuit has no BAP.

a decision relating to the effect of a lapsed UCC financing statement covering a manufactured home. The bankruptcy court elected to rely upon the other side of the split of cases. In the *Matter of Ottaviano*, 68 B.R. 238, 240 (Bankr. D. Conn. 1986), Judge Krechevsky identified that there was a split of authority on the debtor's use of avoidance powers. He first cited some of the cases that prohibited the debtor from bringing such actions, and then stated, "I disagree, and accept the majority view that a chapter 13 debtor has standing to bring actions under the Bankruptcy Code's avoidance powers." The bankruptcy court also referenced *In re Boyette*, 33 B.R. 10, 11 (Bankr. N.D.Tex. 1983) ["the Chapter 13 Debtor has standing to employ the § 544 avoiding powers to defeat an unperfected security interest"] and *Einoder v. Mount Greenwood Bank (In re Einoder),* 55 B.R. 319, 323 (Bankr. N.D.Ill. 1985) ["Therefore, it is only reasonable that the bankruptcy court allow the debtor to exercise the avoiding powers for his or her own benefit and for the creditors' indirect benefit as the trustees are unlikely to ever pursue those matters on their own."].

The Seventh Circuit Court of Appeals had already resolved this controversy in this district.

> Chapter 13 grants the debtor possession of the estate's property, 11 U.S.C. § 1306(b), which is defined by § 541 to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The phrase "legal or equitable interests ... in property" includes choses in action and other legal claims that could be prosecuted for benefit of the estate. *See In re Smith*, 640 F.2d 888 (7th Cir.1981) ("All causes of action become property of the estate under section 541."); *see also Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988); *In re FBN Food Serv., Inc.,* 185 B.R. 265, 273 (N.D.Ill.1995); *In re U.S. Marketing Concepts, Inc.*, 113 B.R. 487, 490 (Bankr. N.D.Ind.1990). The chose in action, here a discrimination case, belongs to the estate and was being prosecuted for the benefit of its creditors. It would frustrate the essential purpose of § 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit the estate. Significantly, the Second and Third Circuits have agreed that Chapter 13 debtors can bring claims in their own name. *See Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513, 515 (2d Cir.1998); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1209 n. 2 (3d Cir.1992); *see also Donato*

> *v. Metropolitan Life Insurance Co.,* 230 B.R. 418, 425 (N.D. Cal.1999); *In re Wirmel*, 134 B.R. 258, 260 (Bankr. S.D. Ohio 1991).

*Cable v. Ivy Tech State College*, 200 F.3d 467, 472-473 (7th Cir. 1999). The Seventh Circuit unequivocally held "that a debtor-in-possession has standing to file, prosecute and appeal a chose in action belonging to the estate under Chapter 13." *Id.* at 470.

The avoidance of 21st Mortgage's unperfected lien will preserve the dollars from the budget that otherwise would have been paying a secured claim and instead benefit the administration of the case and payments to general unsecured claims—the precise "indirect benefit" that Judge Ginsberg foresaw in *Einoder*.[2]

Appellant's reliance upon *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 120 S.Ct. 1942 (2000) is misplaced. That case, first of all, was a case under chapter 7. "Chapter 7 establishes a much more radical solution to indebtedness, requiring the liquidation of the debtor's property, to which end Congress granted the trustee broad powers without interference from the debtor." *Cable v. Ivy Tech* at 472. Second, the case involved a creditor insurance company attempting to use a trustee power. It made no mention as to whether a debtor-in-possession would have been able to do so. The chapter 13 debtor is cloaked in the powers of a debtor in possession. A creditor is not.

---

[2] There is also the concept of "derivative standing." A bankruptcy court may confer the standing on others to pursue a cause of action that the trustee or debtor-in-possession refuses to pursue. For example, in *Unsecured Creditors Committee of Debtor STN Enterprises* v. Noyes, 779 F.2d 901 (2d Cir. 1985), a chapter 11 case, the only "trustee" was the debtor-in-possession. The unsecured creditors committee appointed in that case believed that there were recoverable transfers to the officers of the company, and the debtor refused to pursue claims against its officers. The Second Circuit held that there exists an implied right to use the trustee's right to avoid and recover improper transfers with court approval. This is the same type of rationale employed in *Einoder*: "it is also clear that in Chapter 13 cases, the trustee rarely, if ever, pursues such actions, because the trustee reaps little benefit." *Einoder*, 55 B.R. at p. 322.

**B. The Court Correctly Avoided 21st Mortgage's Unperfected Lien.**

Wisconsin law protects persons dealing with real estate. It has imposed a mechanism for a buyer to check to find out whether there are encumbrances against the land. A person claiming a security interest in a home may tell the rest of the world about their claim by filing a mortgage with the office of the Register of Deeds in the county where the real estate is located. See, e.g., Wis. Stat. §59.43. If that person has a claim on a fixture located on that property, it may instead file a UCC financing statement, also with the office of the Register of Deeds. Wis. Stat. §409.501.

> Except for patents issued by the United States or this state, or by the proper officers of either, every conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first.

Wis. Stat. §706.08(1)(a).

21st Mortgage neither filed a mortgage nor a UCC financing statement. Warfels, using the trustee's powers under §544 of the bankruptcy code, had the status of that subsequent purchaser in good faith and for valuable consideration under the express language of 11 U.S.C. §544(a)(3). As such, they could avoid that lien. It is as if the bankruptcy estate were that bona fide purchaser for value. The statute provides "The trustee[3] . . . may avoid any transfer of property of the debtor or any obligation incurred by the debtor" that such a status holder could do. In Wisconsin, an unperfected lien is void, *supra*. The unperfected lien would therefore be subject to elimination in a declaratory judgment action, Wis. Stat. §806.04, in a quiet title action, Wis. Stats. §841.01, or in an action to extinguish the interest of another, Wis. Stat. §840.03(1)(b).

---

[3] Or in this case, the Debtor-in-Possession as spelled out in Section A, *supra*.

The power to achieve the Court's result was present in §544(1)(a): "the trustee… may avoid the transfer of property of the debtor."  This would include the transfer by unperfected lien.

Nonetheless, the Court did reference §544(1)(b).   The Court need not have resorted to that additional statute.  Sec. (b) also permits the avoidance of liens.  It has an opening independent clause, "the trustee may avoid any transfer of an interest of the debtor in property," just as found in sec. (a).  The use of the word "or" "typically signifies a disjunctive list, meaning satisfying any one condition in the list is sufficient." *A Guide To Reading, Interpreting And Applying Statutes*, The Writing Center at Georgetown Law, p. 4, retrieved on May 13, 2022 at https://www.law.georgetown.edu/wp-content/uploads/2018/12/A-Guide-to-Reading-Interpreting-and-Applying-Statutes-1.pdf.  Thus, separating the clauses with the or,

1.  The trustee (or debtor-in-possession) may avoid:

    a.  Any transfer of an interest of the debtor in property

    b.  Any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim…

The trial judge determined that the independent clause applied.  22-CV-88, ECF 3-7: 11, 14, 46 and 47.

The interest transferred, of course, is the lien upon the mobile home that was not properly perfected.  It would have continued to exist as between the parties had it not been avoided. Its avoidance benefits the estate by freeing up the monies that otherwise would have been paid to 21st Mortgage as a secured creditor.

21st Mortgage seems to argue that even if a chapter 13 debtor can exercise the trustee's power as a debtor-in-possession, it cannot avoid the lien.  It would be a silly result altogether if the debtor-in-possession, as the hypothetical innocent purchaser for value without notice, had a

status that was superior to the unperfected lien but could not do anything about it. The Supreme Court validated Blackstone's view of the law: "it is a general and indisputable rule that where there is a legal right, there is also a legal remedy by suit or action at law whenever that right is invaded." *Marbury v. Madison*, 5 U.S. 137 (1803), citing Blackburn, *Commentaries*, p. 23. Thus, for instance, the unrecorded mortgage securing a loan between partners was avoidable by the debtor-in-possession under 11 U.S.C. sec. 544(a)(3). *Matter of Berge*, 39 B.R. 960, 963 (Bankr. W.D. Wis. 1984). *See also In re Carley Capital Group*, 117 B.R. 951 (Bankr. W.D. Wis. 1990) [debtor-in-possession may avoid a mortgage that a bond fide purchaser would have no reason to believe continued to be valid]; *In re Bridge,* 18 F.3d 195 (3rd Cir. 1994) ["We conclude that under New Jersey law, which we find applicable to the controversy, the trustee's 'strong arm' powers as a hypothetical bona fide purchaser, see 11 U.S.C.§544(a)(3), entitle the trustee to avoid the equitable lien of the unrecorded mortgage, and hence we will affirm."].

## C. The Bankruptcy Court Correctly Found the Lien of 21st Mortgage to Be Unperfected.

Wisconsin has a preference for making claims related to real estate easy to determine. It therefore requires that when items are affixed to the real estate, there be one of two methods to permit a searcher to determine those that have interests in those fixtures, that being either by recording a mortgage or a fixture filing under the Uniform Commercial Code. As to the latter, a fixture is defined as goods that "have become so related to the particular real property that an interest in them arises under real property law." Wis. Stat. § 409.102(1)(k). Pursuant to Wis. Stat. § 409.334, a purchase-money security interest in goods that are to become fixtures must be perfected within 20 days of the goods becoming fixtures. Wis. Stat. §§. 409.334 and 409.502 both then relate to the filing and perfection of a security interest in fixtures. A perfected security interest in fixtures thereafter has a priority over conflicting security interests in the real estate. *Id*.

This can include security interests created in a "manufactured-home transaction."  This is defined in Wis. Stat. § 409.102(1)(ng):

> "Manufactured-home transaction" means a secured transaction:
> 1. That creates a purchase-money security interest in a manufactured home, other than a manufactured home held as inventory; or
> 2. In which a manufactured home, other than a manufactured home held as inventory, is the primary collateral.

The perfection then references Wis. Stat. § 409.311(1)(b) or (f), which in turn points to Subchapter V of Chapter 101, Wis. Stats., the Manufactured Homes and Mobile Homes code. Under Chapter 101, perfection requirements are found in Wis. Stat. § 101.9213, where a dichotomy is created between "a manufactured home of a type for which a certificate of title is required" and those for which a certificate of title is not required.  The requirement to obtain a certificate of title is spelled out under Wis. Stat. § 101.9203.

The owner of a manufactured home that is situated in this state or intended to be situated in this state is not required to make application for a certificate of title under Wis. Stat. § 101.9209 if the owner of the manufactured home intends, upon acquiring the manufactured home, to make the manufactured home a fixture to land in which the owner of the manufactured home has an ownership or leasehold interest subject to Ch. 706. Thus, the requirement of a certificate of title does not apply to homes which are to be affixed to owned real estate.

In this case, it was clear that the home was to be delivered to and become a permanent addition to the property.

Where the property is not of a type for which a certificate of title is required, the statute reverts to subch. VI of Ch. 409, titled "Filing." See, Wis. Stat. § 101.9213(6). In Subch. VI, Wis. Stat.§ 409.502 provides for filing a real-property-related financing statement or a mortgage relating to an interest in real property.

When one does not obey the precise rules, there can be consequences. The Bankruptcy Court for the Western District of Wisconsin once observed, "Whether one is baking a cake, building a house, or recording a mortgage, sometimes even the slightest deviation from the directions can lead to catastrophe. Cakes don't rise, buildings fall down, and ... mortgages aren't perfected." *Seelen v. Couillard*, 486 B.R. 466, 469 (Bankr. W.D. Wis. 2012).

> In Wisconsin, an interest in property can be defeated if it is left unrecorded (or is not properly recorded). Wis. Stat. § 706.08(1)(a) provides that:
>> *[E]very* conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first (emphasis added).
>
> These recording requirements "shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." Wis. Stat. § 706.001(1)…
>
> The recording statute contemplates that relevant instruments will be properly filed so that the complete title history of a parcel can be quickly determined from the public record, thereby preventing subsequent purchasers from being hurt by hidden (or undiscovered) transactions. *See Kordecki v. Rizzo*, 106 Wis.2d 713, 317 N.W.2d 479, 482 (Wis.1982). Wisconsin law anticipates that subsequent purchasers and other parties will normally obtain notice of earlier conveyances from the title record. See Wis. Stat. § 706.09(1)(b). A prior adverse interest which relies upon a conveyance outside the chain of title for its validity or priority is essentially subordinated to later—but properly recorded—interests. In this regard, § 706.09(1)(b) provides that a subsequent purchaser's interest is superior to an interest created by:
>> *Any* conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain. No reference shall be definite which fails to specify, by direct reference to a particular place in the public land record, or, by positive statement, the nature and scope of the prior outstanding interest created or affected by such conveyance, transaction or event, the identity of the original or subsequent owner or holder of such interest, the real estate affected, and the approximate date of such conveyance, transaction or event (emphasis added).

*Seelen v. Couillard,* 486 B.R. 466, 471-73 (Bankr. W.D. Wis. 2012).

21st Mortgage did not follow the precise statutory directions for giving notice to potential buyers that it had an interest in the manufactured home affixed to Warfels' real property.  While the manufactured home in transit would have been "personal property," upon its installation it became a "fixture" as the unchallenged findings of fact provide.

In a similar situation, a mobile home was affixed to the owner's property in Illinois.  Like here, the lender in that case argued that the lien perfection it originally filed carried over to its permanent emplacement.  The court there found that the lender should have perfected its security interest under the UCC.  "[T]he Court finds that the fixture filing provisions of section 9-313 are applicable and that, by failing to perfect it interest in the mobile home by a fixture filing, the Bank of Casey's purchase money security interest has become subordinated to the conflicting security interest of the Farm Credit Bank."  *In re Beabout*, 110 B.R. 883 (Bankr. S.D. Ill. 1990).  Note that the Uniform Commercial Code referenced in the Illinois case is substantially similar current Wisconsin statutes relating to fixture filings.  See, e.g. Wis. Stat. § 409.334, providing a 20-day period to perfect a fixture filing after goods become fixtures.  Of course, 21st Mortgage did not avail itself of the fixture filing statute.

Wis. Stat. § 70.043 governs mobile home classification for property tax purposes and provides that a mobile home is an improvement to real property if it is connected to utilities and is set upon a foundation upon land that is owned by the mobile homeowner. A mobile home is "set upon a foundation" if it is off its wheels and is set upon some other support. In contrast, if the mobile home is located on land not owned by the mobile homeowner or if it is not set upon a foundation or connected to utilities, it is personal property. See Wis. Stat. § 70.043(1)-(2).

In *Ahrens v. Town of Fulto*n, the Court held that a mobile home is "set upon a foundation" when "the home is resting for more than a temporary time, in whole or in part, on

some other means of support than its wheels". *Ahrens v. Town of Fulton*, 251 Wis. 2d 135 (2002). This definition rests on a distinction between temporary and permanent placement, "recognizing that the Legislature intended that permanency of the structure was important in distinguishing between real property and personal property." *Id.* The Court declined to provide a specific number of days that would exceed the temporary threshold, but noted that permanency and mobility have subjective considerations (i.e., the court should look at the mobile home owner's intentions with the home). *Id.*

Regarding types of mobile home foundations, the Court has held that chocks, basic stabilizing jacks and levelers and blocks are all sufficient support mechanisms to satisfy the permanency requirement. *Id.*

The Supreme Court used Aherns in further support of what is a fixture versus personal property in *Kohn v. Darling Community Schools*, 2005 WI 299, 698 N.W.2d 794 (2005). There, the issue was whether bleachers were fixtures at a school for insurance coverage purposes. It reasserted the *Ahrens* determination that "a mobile home is an improvement to real property when the home is resting for more than a temporary time, in whole or in part, on some other means of support than its wheels." *Kohn*, ¶ 7.

21st Mortgage's argument dwells on the filing it did complete, i.e., creation of a certificate of title, when the relevant statutes require recordation with the Register of Deeds to perfect its filing in a fixture. In part, it says that one statutory section requires that a certificate of title be issued when there is a security interest created. Wis. Stat. § 101.9214. However, no certificate of title is required when "the owner of the manufactured home intends, upon acquiring the manufactured home, to make the manufactured home a fixture to land in which the owner of the manufactured home has an ownership or leasehold interest subject to ch. 706." Wis. Stat. §

101.9203.  Further, Wis. Stat. §101.9218(2) eliminates the certificate of title requirement: "**(2) Fixtures excluded**. Notwithstanding ss. 101.921 to 101.9217, the method provided in ss. 101.921 to 101.9217 of perfecting and giving notice of security interests does not apply to a manufactured home that is a fixture to real estate or to a manufactured home that the owner intends, upon acquiring, to permanently affix to land that the owner of the manufactured home owns."

21st Mortgage also emphasizes the exclusive nature of the perfection under Wis. Stat. § 101.9218(1) while completely ignoring the exception under (2) quoted above for fixtures.

The bankruptcy court did a thorough job of analyzing the very convoluted interplay between the statutes.  It determined that when the property is to become "permanently affix[ed]" to land that the owner of the manufactured home owns, it creates a very different set of perfection rules.

The UCC does not provide an alternate rule when goods become fixtures.  Wis. Stat. § 409.334.(5) provides that a security interest may continue in goods that become fixtures. However, it does not provide that such a continuing security interest is properly perfected when they do. The proper perfection rules must be followed.

## CONCLUSION

In order to have a properly perfected security interest in fixtures, including in manufactured homes, the lien must be reflected either with a mortgage or a UCC fixture filing. The rationale for such a requirement is to protect the innocent purchaser for value that their purchase is not subject to some secret lien.  There has to be notice that a regular real estate title check would find that there is some encumbrance on the items to be purchased. 21st Mortgage provided no such notice.  It easily could have—it even had Powers of Attorney that would have permitted it.

A bankruptcy trustee–or, as shown herein, a debtor-in-possession—is granted the status of an innocent purchaser for value without notice. The innocent purchase may avoid an unperfected lien under the bankruptcy code, just as they could quiet title under Wisconsin law.

The bankruptcy court correctly analyzed the proceedings before it. Its decision should be upheld.

Dated this 16th day of May, 2022.

GOYKE & TILLISCH, LLP

/s/ George B. Goyke
George B. Goyke
Attorney for Appellees
Wis. Bar No. 1001340

GOYKE & TILLISCH, LLP
2100 Stewart Avenue, Suite 140
Wausau, WI 54401
(715) 849-8100
goyke@grandlawyers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Wisconsin by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system, to Appellant's Attorney, Terri A. Running

*/s/ Elizabeth Holder*

Elizabeth Holder

Legal Assistant

## CERTIFICATE OF COMPLIANCE

I hereby certify that on May 16, 2022, pursuant to Federal Rule of Bankruptcy Procedures 8015(a)(7) and (4), the attached brief complies with the type-volume limitation.  This brief contains 5499 words, excluding the parts of the document exempted by Federal Rule of Bankruptcy Procedure 8015(g).  This document has been prepared using Office 365 Word.

*/s/ George B. Goyke*
George B. Goyke
Attorney for Appellees